**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LAURA HENDERSON,

    Plaintiff,

vs.                                                  CASE NO. 3:07-cv-614-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") disability payments. Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #15). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #16). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated October 14, 2008 (Doc. #19). The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number).

The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the

written record. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

In the instant action, Plaintiff filed an application for Supplemental Security Income disability payments on September 5, 2003 (Tr. 62-64). After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on September 20, 2005 before Administrative Law Judge John Thompson (the "ALJ") (Tr. 314-49). Plaintiff appeared and testified at the hearing, as did vocational expert Robert Bradley (the "VE") (Tr. 314). Plaintiff was represented at the hearing by Pamela Dunmore, a non-attorney (Tr. 314). On April 19, 2006, the ALJ issued a hearing decision denying Plaintiff's claim (Tr. 14-20). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 5-7). Plaintiff's current counsel of record, N. Albert Bacharach, Jr., Esq., filed the instant action on July 2, 2007 (Doc. #1, Complaint).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2008 edition.

2

bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 416.912(c).

### III. Discussion

Plaintiff is a fifty four year old female with no past relevant work history (Tr. 91, 316).[2] Plaintiff has an eighth grade education (Tr. 317). Plaintiff alleges she is unable to work due to scoliosis, leg swelling, irregular heartbeat, chronic obstructive pulmonary disease ("COPD"), high blood pressure, and depression (Tr. 22, 78). On April 19, 2006, the ALJ issued a decision denying Plaintiff's disability claim at the fifth step of the sequential evaluation process by finding Plaintiff could perform work that exists in

---

[2]The record reflects Plaintiff was born on July 1, 1954 (Tr. 317).

substantial numbers in the national and local economy (Tr. 19). Plaintiff raises four issues on appeal. The undersigned will address each issue in turn.

> **A.     Whether the ALJ Erred at Step 2 of the Sequential Evaluation Process by Finding Plaintiff's Depression not to be a "Severe" Impairment**

Plaintiff contends the ALJ erred at Step 2 of the sequential evaluation process by finding Plaintiff's depression not to be a "severe" impairment, as such term is defined by the Regulations (Doc. #15 at 2-5). The undersigned, however, finds this argument is meritless for the reasons that follow.

At Step 2 of the five-step sequential evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a threshold inquiry. In this circuit, an impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant/plaintiff has the burden of proving that he or she has severe physical or mental impairment(s). *See Bowen*, 482 U.S. at 146 n.5.

The severity of a medically ascertained impairment must be measured in terms of its effect upon the claimant's ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normalty. *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). The ALJ is charged with determining the severity of a claimant's impairments. As noted, it is the effect an impairment has on one's ability to work that determines disability within the meaning of the Social Security Act. Thus, the effects of an impairment are measured by limitations to the ability to work. Consequently, the ALJ

must consider a claimant's limitations to the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 416.920(c), 416.921 (limitations from an impairment determine whether it is severe).

With regard to determining the severity of a mental impairment, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations that deal specifically with mental impairments—otherwise known as the "special technique." 20 C.F.R. § 416.920a. This "special technique" requires the ALJ to, *inter alia*, evaluate the pertinent signs, symptoms, and laboratory findings contained within the case record in order to determine whether a mental impairment exists. 20 C.F.R. § 416.920a(b)(1). If a mental impairment is found, the ALJ must analyze whether certain medical findings relevant to the claimant's ability to work are present or absent. 20 C.F.R. § 416.920a(b).

The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work. 20 C.F.R. § 416.920a(d). These areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 416.920a(c)(3).

The Regulations provide as follows:

When we [the SSA] rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe.* . . .

6

20 C.F.R. § 416.920a(c)(4), (d)(1) (*emphasis added*).

An ALJ's evaluations regarding the degree of functional loss in the four aforementioned areas of function must be incorporated into his or her findings and conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). "Where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF [Psychological Review Technique Form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions" *Id.* at 1214.

Here, the ALJ applied the "special technique" and accepted evidence that Plaintiff's depression causes her to have mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild deficiencies in concentration, persistence, or pace; and no episodes of decompensation (Tr. 16). As stated *supra*, "[i]f we [the Social Security Administration] rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe. . . ." 20 C.F.R. § 416.920a(d)(1).

Contrary to Plaintiff's assertion that "No evidence supports rejecting [Plaintiff's depression] as not severe" (Doc. #15 at 3), the undersigned finds the ALJ relied on substantial evidence to support his finding that Plaintiff's depression is a non-severe impairment. Specifically, the ALJ points to a Psychiatric Review Technique completed in December 2003 by state agency medical consultant, Michael H. Zelenka, Ph.D. ("Dr. Zelenka") (Tr. 16; *see also* Tr. 189-209). Dr. Zelenka reported that Plaintiff's anxiety and depression were not significantly impairing and that Plaintiff only had "mild" functional limitations in the following areas: (1) activities of daily living; (2) social functioning; and (3)

7

concentration, persistence, or pace (Tr. 199). Dr. Zelenka additionally reported that Plaintiff has suffered no episodes of decompensation (Tr. 199).

The Psychiatric Review Technique completed by Dr. Zelenka is evidence of record which supports the ALJ's finding that Plaintiff's depression is not a "severe" impairment, as such term is defined by the Regulations. Plaintiff, however, cites a Mental Status Examination, conducted by Andres Nazario, Jr., Ph.D. ("Dr. Nazario") (which was also completed in December 2003), in support of her contention that the ALJ erred by not finding her depression to be a severe impairment (Doc. #15 at 4-5). Dr. Nazario reported that Plaintiff's "presentation and records reviewed are consistent with a DSM-IV diagnosis of 309.81 Posttraumatic Stress Disorder"[3] (Tr. 186-88; *see also* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 463-68 (4th ed., American Psychiatric Assoc. 2000).

As a preliminary matter, the undersigned would note that Posttraumatic Stress Disorder and Depressive Disorder are not synonymous mental impairments, although the two conditions do share some characteristic symptoms.[4] Nevertheless, Plaintiff ignores established jurisprudence that a mere diagnosis is an insufficient basis for finding an impairment is severe. *Sellers*, 246 F.Supp.2d at 1211. The severity of a medically ascertained impairment is measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of normal body function. *Id*.

---

[3] Plaintiff reported to Dr. Nazario that she suffered sexual abuse as a child (Tr. 187).

[4] *See e.g.* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 369-405; 463-68 (4th ed., American Psychiatric Assoc. 2000).

8

In her brief, Plaintiff quotes the portion of Dr. Nazario's report which states, *inter alia*, that Plaintiff reports she becomes very anxious, cries several times per week, gets angry every day, and does not know when she is happy (Doc. #15 at 4-5; *see also* Tr. 186).[5] Noteworthy, however, is that Plaintiff omits the portion of Dr. Nazario's report which states:

> [Plaintiff] was alert and cooperative. . . oriented to person, place, and time. Her memory, both recent and remote appears intact. [. . . ] She demonstrated the ability to concentrate during the interview. She was persistent in her approach, and her pace appeared adequate. [Plaintiff] appears to be a woman of average intelligence. Her judgment and insight seem good. [. . . ] She appears able to concentrate, able to understand and follow directions. She appears able to interact with others appropriately.

(Tr. 187-88).

The undersigned would also point out that Dr. Zelenka reviewed Dr. Nazario's report and stated the diagnosis of Posttraumatic Stress Disorder was "without any of the classic symptoms" (Tr. 201). Dr. Zelenka went on to state that Plaintiff does, however, display "mild symptoms of anxiety and depression which are not significantly impairing" (Tr. 201).

Having considered Plaintiff's argument, the undersigned finds Dr. Zelenka and Dr. Nazario's reports are actually consistent with regard to the effect Plaintiff's alleged mental impairment(s) have upon her ability to work. The reports of both Dr. Zelenka and Dr. Nazario's indicate the limitations that stem from Plaintiff's alleged mental impairment(s) do not significantly limit her ability to work (*see* Tr.187-88, 199-201).

---

[5]Although Dr. Nazario's report indicates that Plaintiff was under the care of a psychiatrist, the medical records do not contain any reports from this putative psychiatrist (*see* Tr. 124-313). When asked by the ALJ at the hearing who her psychiatrist was, Plaintiff responded that she could not remember the name of the individual (Tr. 133). Plaintiff stated that this individual worked at the "family medical clinic" (Tr. 332). The records from Family Medical and Dental Centers indicate Plaintiff was prescribed Prozac; however, the records do not reveal that Plaintiff was proscribed Prozac by a psychiatrist, or that she was otherwise under the care of a psychiatrist at Family Medical and Dental Centers (*see* Tr. 133-57, 242-44, 279-85, 287-94). Additionally, Plaintiff testified that the last time she saw the putative psychiatrist was approximately two years prior to the hearing, and that she was no longer taking antidepressant medication (Tr. 332).

Moreover, the undersigned's independent review of the record reveals state agency medical consultant, Gary W. Buffone, Ph.D. ("Dr. Buffone"), also completed Psychiatric Review Technique, dated March 3, 2004 (Tr. 210-24). Dr. Buffone reported Plaintiff only had "mild" functional limitations in the areas of: (1) activities of daily living; (2) social functioning; and (3) concentration, persistence, or pace (Tr. 220). Dr. Buffone additionally reported that Plaintiff has suffered no episodes of decompensation (Tr. 220). Such findings support the ALJ's determination that Plaintiff's depression is not a severe impairment.

Based on the foregoing, the undersigned finds the ALJ relied on substantial evidence of record when he determined Plaintiff's depression was not a severe impairment pursuant to the "special technique," *supra*. Accordingly, and for the aforementioned reasons, the undersigned finds no error in the ALJ's determination that Plaintiff's depression is not a severe impairment.

**B.    Whether the ALJ Erred by not Finding Plaintiff's Impairments Medically Equal a Listed Impairment**

Plaintiff's second argument is that the ALJ erred as a matter of law by not finding Plaintiff's impairments medically equal a listed impairment under 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings"). Plaintiff's argument is unavailing for the reasons that follow.

> To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (*quotations and citations omitted*); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 416.925, 416.926. The evidentiary standards for presumptive disability under the

listings are more stringent than for cases that proceed to other steps in the sequential evaluation process because the listings represent an automatic screening in based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Wilkinson*, 847 F.2d at 662.

Here, Plaintiff asserts she meets the "old" obesity Listing 9.09 (Doc. #15 at 7). Although Plaintiff acknowledges that this listing was "repealed years ago," she states that "it still rules us from the grave" (Doc. #15 at 7 n. 2). The undersigned, however, does not see how Listing 9.09 is applicable to Plaintiff's claim. Specifically, Listing 9.09 was deleted from the Regulations, effective October 25, 1999. *See* SSR 02-1p, 2002 WL628049, at *3 (S.S.A. Sept. 12, 2002). The only remaining application of Listing 9.09 is for individuals who were found eligible for benefits under said listing prior to its deletion. *See* SSR 02-1p, 2002 WL628049, at *7-8. Plaintiff did not apply for Supplemental Security Income benefits until September 2003 (Tr. 62); therefore, the deleted obesity listing is irrelevant to Plaintiff's claim.

Plaintiff additionally asserts, however, that the ALJ should have found her impairments medically equal some other unspecified listing due to her height, weight, evidence of "flank and pelvic pain," and "swelling of the legs, ankles, feet and fingers" (Doc. #15 at 8). Although Plaintiff does not specify which listing she believes she medically equals, she cites transcript pages 150, 185, 255, and 282 in support of her contention that SSR 02-1p would direct a finding of medical equivalence to some unspecified listed impairment (Doc. #15 at 8).

SSR 02-1p states, in pertinent part, as follows:

Because there is no listing for obesity, we will find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. [. . .]

However, *we will not make assumptions about the severity or functional effects of obesity combined with other impairments*. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *We will evaluate each case based on the information in the case record*.

SSR 02-1p, 2002 WL628049, at *5 (*emphasis added*).

As noted above, obesity may complicate impairments of the cardiovascular, respiratory, and musculoskeletal body systems. After the deletion of Listing 9.09, paragraphs were added to the prefaces of the musculoskeletal, respiratory, and cardiovascular body systems listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. *See* 20 C.F.R. 404 Appx. 1 Sub. P, 1.00Q, 3.00L, and 4.00F.

Here, the medical record does not establish that Plaintiff's obesity compromised any of the aforementioned body systems to the extent that she meets or equals a listed impairment. Although the transcript pages cited by Plaintiff, *supra*, reveal that she has complained of "flank and pelvic pain" and "swelling of the legs, ankles, feet and fingers," these transcript pages do not reveal any medically assessed limitations due to said conditions (*see* Tr. 150, 185, 255, 282).

SSR 02-1p states the "inability to ambulate effectively" (as defined by Section 1.00B2b of the Listings) is required for obesity to be found to medically equal a listed musculoskeletal impairment related to weight bearing joints (*i.e.* hip, knee, or ankle).  SSR 02-1p, 2002 WL628049, at *5; *see also* 20 C.F.R. 404 Appx. 1 Sub. P, 1.02A.  The inability to ambulate effectively is defined as "an extreme limitation of the ability to walk."  20 C.F.R. 404 Appx. 1 Sub. P, 1.00B2b.

One of the transcript pages cited by Plaintiff states, "[Plaintiff] walked without difficulty and her posture and gait appeared within normal limits" (Tr. 150).  Since the inability to ambulate effectively is required in order to medically equal a listed musculoskeletal impairment related to weight bearing joints, this transcript page does not support Plaintiff's theory that SSR 02-1p would direct a finding of medical equivalence to a listed musculoskeletal impairment.  To the extent Plaintiff argues her obesity medically equals a respiratory or cardiovascular body systems listing, Plaintiff points to no evidence that would support such a contention.

Based on the foregoing, the undersigned finds Plaintiff did not meet her burden of showing that the medical findings related to her "flank and pelvic pain" and "swelling of the legs, ankles, feet and fingers" equal in severity and duration to a listed impairment.  *See Wilson*, 284 F.3d at 1224.

### C. Whether the ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain

Plaintiff's next argument is that the ALJ's articulated reasons for discrediting Plaintiff's subjective complaints of pain are not supported by substantial evidence (Doc. #15 at 9).  This argument is unpersuasive as stated below.

The thrust of Plaintiff's argument is as follows:

> With the severity of JAMES' [sic] pelvic pain problems noted by at least two doctors ([Tr.] 255, 282), the least the ALJ could have done would have been to propound interrogatories to one, [sic] of these doctors regarding the length of time Plaintiff HENDERSON is able to sit and stand in combination during an 8 hour workday. The ALJ's articulated reasons for discrediting Plaintiff HENDERSON's complaints of pain are not supported by substantial evidence.

(Doc. #15 at 9).

Even though Plaintiff's aforementioned argument is incoherent and Plaintiff provides no substantive argument in support of the same, the undersigned will nevertheless address this argument.

The Eleventh Circuit pain standard requires evidence of an underlying medical condition, and either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). After considering a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)); *see also Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) (finding the credibility of a claimant's testimony is the duty of the Commissioner).

Additionally, the Regulations state that when the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the pain alleged, the Commissioner must then evaluate the intensity and persistence of the pain to determine how it limits the claimant's capacity for work. 20

C.F.R. § 416.929(c). In evaluating the intensity and persistence of a claimant's pain, the ALJ shall consider all of the available evidence, including the claimant's statements, signs and laboratory findings, and statements from treating and non-treating sources. 20 C.F.R. § 416.929(c).

Here, although the ALJ found Plaintiff suffered from the severe impairments of "histories of Wolff-Parkinson-White Syndrome,[6] obesity, mild chronic obstructive pulmonary disease, scoliosis, uterine fibrosis, and vaginal bleeding" (Tr. 16), the ALJ also determined that from all of the available evidence Plaintiff's allegations of pain were simply not credible "in light of her medical history, the degree of medical treatment required and the reports of her treating and examining physicians" (Tr. 18). In support of said determination, the ALJ cited various reasons, *infra*, that the Court finds are supported by substantial evidence of record.

Specifically, the ALJ noted that, while Plaintiff alleged disabling back and leg pain, the medical record was "relatively benign except for some evidence of scoliosis and swelling in her feet" (Tr. 18, 176). The undersigned's independent review of the record reveals the ALJ's statement in this regard is supported by the record (*see* Tr. 124-313). Additionally, although the ALJ acknowledged Plaintiff's complaints of severe heart palpitations for thirty seconds per day and her diagnosis of Wolff-Parkinson-White Syndrome (Tr. 18), he pointed out that Plaintiff's Holter test monitoring was normal, and that a cardiac consultation in January 2005 was essentially normal (Tr. 18, 238-39, 251).

---

[6]Wolff-Parkinson-White Syndrome is an electrical abnormality of the heart, resulting in a fast heart rate. *See* MayoClinic.com, http://www.mayoclinic.com/health/wolff-parkinson-white-syndrome/DS00923 (last visited Mar. 10, 2009).

15

Moreover, concerning Plaintiff's chronic obstructive pulmonary disease, the ALJ noted pulmonary functioning testing in January 2004 revealed only a mild restrictive lung defect (Tr. 18, 290).

Plaintiff alleges that her obesity and pelvic problems result in disabling pain (Doc. #15 at 8, 9); however, Plaintiff provides no substantive argument in support of this claim, and no medical source has indicated that Plaintiff's obesity, pelvic pain, or any other impairments are disabling (*see* Tr. 124-313). Even though pages 255 and 282 of the transcript reveal Plaintiff complains of flank and pelvic pain, the severity of her pain was not noted, and no limitations due to said pain were assessed (*see* Tr. 255, 282). Accordingly, and for the reasons stated herein, the undersigned finds the reasons articulated by the ALJ for discrediting Plaintiff's subjective complaints of pain, *supra*, are supported by substantial evidence of record.

### D. Whether the ALJ Erred as a Matter of Law by not Seeking Updated Medical Opinions or Records

Plaintiff's final argument is that the ALJ failed to fully and fairly develop the record by not seeking updated medical opinions or records (Doc. #15 at 11-15). This argument is unavailing.

The Regulations specify that it is the plaintiff who bears the burden of providing the medical evidence necessary for the Commissioner to make an informed disability determination. *See* 20 C.F.R. §§ 416.912(c), 416.914. The Regulations state that "[y]ou [the claimant] must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." 20 C.F.R. § 416.912(c).

An ALJ's basic obligation to develop a full and fair record only rises to a special duty when a claimant, unfamiliar with hearing procedures, appears before the ALJ unrepresented. 20 C.F.R. § 416.1505 (providing that a claimant may be represented by an attorney or a qualified non-attorney). In the case at bar, Plaintiff was represented at the hearing by, presumably, a qualified non-attorney.[7] Therefore, the Commissioner's duty to fully and fairly develop the record would not have risen to a special duty, and would have remained only a basic obligation to fully and fairly develop the record.

Here, there are no evidentiary gaps in the record, such as missing medical records, that would require remand. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (finding remand appropriate where the claimant informed the ALJ about the existence of recent medical records, which the ALJ never procured). Accordingly, since there is no indication that medical records are missing from the record, and since it is Plaintiff who bears the burden of providing the medical evidence necessary for the Commissioner to make an informed disability determination, the undersigned does not find the ALJ committed reversible error in this instance by not seeking additional medical evidence. *See* 20 C.F.R. §§ 416.912(c), 416.914.

## IV. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §

---

[7]Plaintiff does not challenge the qualifications of her non-attorney representative.

405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this  12th   day of March, 2009.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge